William Thomas, Respondent, *v.* Christian F. Liebke et al., Appellants.

March 13, 1883.

1. ADMINISTRATION — ASSIGNMENTS OF DEMANDS. — The statutory provision as to the assignment of judgments on the margin of the record, does not apply to allowances of demands in the probate court.

2. ASSIGNMENTS OF ALLOWED DEMANDS. — The assignment, in writing, of a demand allowed in the probate court, gives title to the assignee as against a second assignee who takes without notice.

3. PLEADING. — An allegation in an answer, that the plaintiff knew certain facts, does not tender an issue as to the existence of such facts; nor is the plaintiff's traverse of such an allegation an admission of the existence of such facts as are alleged to have been known.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Affirmed.*

G. M. STEWART, for the appellant: Allowances in the probate court are evidences of judgments rendered by a court of record, in the hands of parties in whose favor they were rendered. Such judgments are made assignable by statute, and the legal title thereto passes to the assignee. At common law, such assignments were not recognized. — *Barden* v. *Savage*, 1 Mo. 560. Such allowances are judgments.— Rev. Stats. 1865, chap. 123, sect. 9. An assignment of a judgment may be made if the assignment be filed with the papers in the cause, although not attached to the judgment roll. — *Tutt* v. *Cousins*, 50 Mo. 152; *Burgess* v. *Carr*, 52 Mo. 43; *May* v. *Killan*, 1 Mo. App. 381. The bankruptcy proceedings contained an adjudication of the title of the property, of which the plaintiff had notice, and by which he is bound as completely as if he were a party thereto. — *Strong* v. *Phœnix Ins. Co.*, 62 Mo. 289; *Whittaker* v. *McCormick*, 6 Mo. App. 114. If, however, the plaintiff is not bound by that judgment, on the theory of *res adjudicata,*

he is bound on another theory equally as conclusive, viz., estoppel. He refused to speak when he ought to have done so, therefore he shall not now be heard to speak. — *Pelkington* v. *Insurance Co.*, 55 Mo. 172; *Skinner* v. *Steven*, 4 Mo. 93; *Reis* v. *Bunce*, 49 Mo. 231; *McDermott* v. *Barnum*, 19 Mo. 204.

D. T. JEWETT, for the respondent: The assignment of the allowance by the probate court was not made as required by law, for the assignment of a judgment; but still it is good in equity. — *Tutt* v. *Cousins*, 50 Mo. 152; *Burgess* v. *Cave*, 52 Mo. 44.

BAKEWELL, J., delivered the opinion of the court.

This is a bill in equity, the object of which is to obtain the proceeds of two allowed demands in favor of defendants Liebke and Schrage, and against the Sectional Dock Company, of which defendant Garesché is administrator. The Dock Company was a co-partnership dissolved by the death of a co-partner, and Garesché administered upon the partnership assets. Garesché was permitted to pay the money into court. Defendant Mary Litzig, who claims the fund, was the only appellant. The trial court decreed that there be paid to plaintiff out of the fund in court $2,129.30.

It appears from the evidence that, on the 8th of June, 1876, plaintiff Thomas, at St. Louis, delivered to defendants Liebke and Schrage, who were co-partners doing business in St. Louis, his two negotiable notes, one for $2,100 and one for $1,900. These notes were for the accommodation of Liebke and Schrage, who then delivered to Thomas a writing signed by them by which they assigned to Thomas the allowed demands in question, which were described as being allowances in the probate court of St. Louis against the Sectional Dock Company, in favor of Liebke and Schrage, amounting to $4,000, and then in the hands of attorneys at Cincinnati. The writing stipulated that, if the

notes were paid or satisfied by Thomas, these allowed demands should become absolutely his, and be delivered to him, otherwise the agreement to be void.

These original notes were paid, partly in cash and partly by other notes given by Thomas; and from time to time new notes were given by Thomas for less and less amounts, as partial payments were made, until March, 1877, at which time notes were given by Thomas, which were for the unpaid balance of the original notes, and as to which new notes there is no question that they were secured by the agreement. When these March notes came due, they were taken up by four notes of Thomas — two dated June 8, 1877, for $703 and $980, and two of July 6, 1877, for $400 and $200. There is no writing to show whether these last notes which were paid by Thomas were secured by the collaterals named in the agreement. Thomas and Liebke testify as to this, and their testimony is directly contradictory. Liebke swore that, in May, 1877, he found that his firm were liable for the accommodation of Thomas to a larger amount than Thomas's liability for them, and that they refused to give Thomas security any longer; that Thomas agreed to this, and agreed that Liebke and Schrage might withdraw the collateral from the hands of the attorney in Cincinnati. All this Thomas explicitly denies. The testimony of the two men cannot be reconciled. Thomas also affirms, and Leibke denies, that these last notes were given in renewal of any notes secured by the collaterals. But it seems that these four notes, together with a note for $394.55, given by Liebke and Schrage, and on which Thomas raised money, did in fact take up the notes which were expressly referred to in writing by Liebke and Schrage as secured by the collaterals.

Liebke and Schrage failed in August, 1877, before any of these last five notes matured. They were discharged in bankruptcy by paying thirty per cent under the Bankrupt Act. All the five last-named notes were taken up by

Thomas and produced by him on the trial. He says he paid seventy per cent on them and interest; thirty per cent was paid by dividends from the bankrupts' estate.

Liebke swears that a dividend of thirty per cent was paid by his firm in bankruptcy on certain notes, which, he claims, Thomas should allow on these notes. Thomas says that this thirty per cent should be credited, not on these notes, but on other notes on which he has sued Leibke and Schrage. However that may be, Liebke and Schrage, in their answer, do not set up any set-off, but aver the entire payment of the notes upon which the present claim is based, and Thomas produces the notes and swears that they were paid by him (the thirty per cent dividend only covering accruing interest), and he gives full particulars as to dates and modes of payment.

In June, 1876, according to the testimony of Liebke, he got the collaterals from Cincinnati and delivered them to his sister, the defendant Mary Litzig, to secure her for indorsements and loans made by her for Leibke and Schrage, to the amount of nearly $4,000. On the faith of these collaterals, she loaned them $3,000. She had no notice whatever of any claims of Thomas to these collaterals. One of the indorsements to secure which these collaterals were delivered to her, was a note for $790, made for Thomas's accommodation. He received the proceeds of this note and paid it at the bank after it was dishonored. He had it in his possession at the trial. It appeared from the evidence of Mrs. Litzig's son and of the teller of the bank at which the note had been discounted, that Mrs. Litzig herself paid this note to the bank at maturity, and that afterwards she sold it to the bank, who collected the whole amount of the note from Thomas. There seems to have been something wrong about this transaction, which is not at all explained. Ernst Litzig, the son, who transacted the business for his mother, professes to be unable to recollect what the bank paid her for the note, whether $25

or $600. But he swears it was a small amount. Mrs. Litzig does not testify in the case at all.

The statute as to the . allowance of demands in the probate court provides (Rev. Stats., sect. 192), that " a concise entry of the order of allowance or finding shall be made on the record of the court,-which shall have the force and effect of a judgment."

The statutory provision as to the assignment of judgment is as follows (Rev. Stats., sect. 2762) : " Judgments of courts of record and judgments obtained before justices of the peace for the recovery of money, may be assigned in writing by the plaintiff and the assignees thereof successively, which assignment shall be on, or attached to, the judgment, and attested by the clerk of the court or justice of the peace, and when so made and attested, shall vest the title of such judgment in each assignee thereof successively."

It is held, that when the statutory form of making the assignment is pursued, this imparts notice to all parties. But this method of assignment is held to be cumulative, and not exclusive ; and a judgment may be assigned like any other chose in action, and the assignee may sue in his own name. *Tutt* v. *Couzins*, 50 Mo. 152.

We are of the opinion, however, that the statutory provision for the assignment of " judgments for the recovery of money " is not intended to apply to the allowance of a demand in the probate court. This is not a judgment that plaintiff shall recover of the administrator, or of the assets of the estate, the amount allowed ; but it is a finding that the deceased in his lifetime was indebted to the claimant in a certain sum, which is to be paid out of the assets of the estate, if there be sufficient assets, and so far as the assets shall go, *pro rata* with other demands in the same class, and so soon as the court shall direct the administrator to pay allowances of that class. The record entry of the allowance is to be a concise entry. It has never been the

practice to assign these allowances by an entry on the margin of the record of the probate court. The judge of probate enters the allowance on the back of the demand, at the time the allowance is made, and delivers this paper to the claimant; and it was such papers, with the allowance written out upon them, and signed by the judge, that were in Cincinnati at the time these allowed demands were assigned to Thomas. It is the practice for the administrator to pay the amount payable upon a demand, to the holder of this written allowance, and this written allowance is accepted on settlement as a voucher for the administrator that he has paid the demand. If it were to be held that an assignment upon the margin of the record of the probate court had the effect of a statutory assignment of the claim, and imparted notice as such an assignment does, then it would follow that an administrator would be safe in paying no allowed demand until he had made an examination of the record to see who owned the claim. This has certainly not been the practice.

The writing on the back of the claim by the judge of probate is not, however, the judgment entry; and if it should be lost, a certified copy of the judgment would, in all respects, supply its place. To effect a valid assignment of this demand, it does not appear to have been necessary either to have an assignment upon the margin of the record, or a delivery to the assignee of the written memorandum of allowance made by the judge of probate.

At the time that Mrs. Litzig indorsed the paper which she afterwards paid, and advanced to Liebke and Schrage the money which she lent to them, these allowances were in Cincinnati. According to Liebke's statement, she made these advances upon the faith of his promises to her in May, that he would deliver to her these allowances as collateral security. But the allowances were not placed in her hands until July. It does not appear that she had any notice of the claim of Thomas, or of the fact that an assignment had

been made to him. But we do not know that Thomas was bound to give such notice to the world; nor, as it appears, was there any way in which he could give notice. If, then, the testimony of Thomas is to be believed, as to the fact that the notes in virtue of which he claims were given in renewal of the notes originally secured by these allowances, and represent the balance of those notes actually paid by him, we do not see that Thomas can be charged with any conduct in the matter calculated to throw Mrs. Litzig off her guard, that she has any superior equity to have these collaterals applied to her indebtedness, or that he has lost the security which was originally given to him. Mrs. Litzig was an innocent purchaser for value; but she took only such title to these allowances as the assignor had; and, according to the finding of the chancellor upon the conflicting evidence, at the time that Mrs. Litzig took the assignment the allowances had been already assigned to Thomas to secure an indebtedness to him which was still subsisting when Mrs. Litzig made the loans to Liebke and Schrage of her money and her name.

It is urged by counsel for Mrs. Litzig, that these allowances were scheduled by Liebke and Schrage in the bankruptcy proceedings as pledged to Mrs. Litzig, and that she received them in that composition as part payment of her claims against the estate, receiving dividends only on the residue; and that plaintiff, having stood silent and seen Mrs. Litzig surrender her demands against the estate of Liebke and Schrage on the faith of this collateral, is estopped. It is not said that there is any evidence that these allowances were scheduled as pledged to Mrs. Litzig, but the claim is that the pleadings admit this. The answer of Mrs. Litzig alleges that, during the pendency of the proceedings in bankruptcy, plaintiff knew that she claimed to be the owner of these demands, that they were scheduled by Liebke and Schrage as her property, and proved and allowed as a secured debt, and her dividend paid her on the

excess only. Plaintiff, in his replication, denies that he knew any of these things. We see in this no admission that these facts existed. Plaintiff was not concluded by not having explicitly denied what was stated only by implication. The issue tendered was as to the knowledge of plaintiff, not as to the existence of the fact.

We have said that the testimony is contradictory. As to the main facts, and all the material facts, the only witnesses are Liebke and Thomas, and they directly contradict each other in most important particulars. There is no question, however, that the collaterals were assigned to Thomas in writing. From the great minuteness of detail, and the consistency with which Thomas testifies, we have little doubt that the notes in question represented the original notes secured by these collaterals; and if, as Liebke says, there was an oral understanding that the assignment was no longer to be in force, it seems strange that the written agreement was not destroyed or surrendered at the time. We do not think that we ought to reverse the finding of the court below as against the weight of the evidence. Mrs. Litzig is not called upon to prove that she ever had these collaterals, which her brother says he delivered to her, nor to corroborate him in any respect; and, in some respects, the testimony of Liebke is not entirely consistent. The assignment being shown, the burden was on defendant to show that it had been avoided.

The circuit court, in its decree, finds that the balance remaining due on the five notes paid by Thomas and secured by the collaterals, is $2,129.30. This appears to be erroneous. The balance remaining due on the five notes, after allowing the thirty per cent admitted to have been paid on them by the bankrupt dividend, seems to be over $2,400. The last note had not been paid by Thomas when the suit was commenced, though it was then merged in a judgment, which Thomas had paid long before the trial, and it is suggested that the clerk perhaps made a mistake by adopting

the calculation of counsel for defendants including only four notes. Counsel for respondent asks us now to enter judgment for the amount which appears to be due upon the five notes, or else so to amend the text of the judgment that it will appear not to cover the fifth note. But plaintiff took no steps in the trial court to effect a correction of the judgment which he now says is injurious to him, nor has he appealed from it; and we do not see why he should be allowed to take advantage of defendants' appeal to correct here a supposed error against himself to which the attention of the trial court was never called.

The judgment is affirmed. All the judges concur.